JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 OCT -5  AM 11: 22
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| ERIK SALAIZ, | § |
| Plaintiff, | § |
| v. | § |
| WELLCARE HEALTH PLANS, INC. a Delaware Corporation | § |
| Defendants. | § |

EP22CV0355

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant WELLCARE HEALTH PLANS, INC. ("Wellcare" "Defendant") is a corporation organized and existing under the laws of Delaware and can be served via registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

### JURISDICTION AND VENUE

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

1

4. Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

6. This Court has venue over the Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff's personal cell phone (XXX) XXX-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

21. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

22. Defendant Wellcare offers additional Medicare products to senior citizens with Medicare. *See Exhibit A.*

23. As part of their marketing, Defendant Wellcare hires and authorizes telemarketers to make illegal robocalls with a prerecorded voice message to thousands of consumers *en masse* to solicit additional Medicare products on behalf of Defendant Wellcare.

24. Defendant Wellcare approves of the contracts with the telemarketers.

25. Defendant Wellcare authorizes the payments to the telemarketers.

26. Defendant Wellcare pays the telemarketers out of bank accounts they own and control.

27. Defendant Wellcare approves of the prerecorded voice message scripts their telemarketers use soliciting Medicare products on behalf of Defendant Wellcare.

28. Plaintiff has never had any relationship with Defendant Wellcare or has ever been a customer of Defendant Wellcare and never gave them his prior express written consent to receive the robocalls or follow up calls alleged in this case.

29. Defendant Wellcare has been sued prior to this lawsuit for violating the TCPA *Fiorarancio v. Wellcare Health Plans, Inc.*, No. 2:21-cv-14614-SRC-JBC (D.NJ., Aug. 04, 2021) and continues their illegal behavior because violating the TCPA benefits Defendant Wellcare financially.

30. Plaintiff received at least five (5) robocalls with a prerecorded voice message and two (2) follow up calls to his personal cell phone 1527 within a seven-day period from both telemarketers and agents calling on behalf of Defendant Wellcare soliciting Medicare products ("the calls").

31. Every robocall Plaintiff received from telemarketers calling on behalf of Defendant Wellcare all started with the same prerecorded voice message that stated,

"Hi this is Mary with Medicare Benefits how are you doing today? And just to make sure you qualify how old are you? Hold on a second let me transfer you to a licensed agent, okay?"

32. The prerecorded voice message does not identify Defendant Wellcare.

33. With information and belief Plaintiff has received more robocalls from telemarketers calling on behalf of Defendant Wellcare that are unknown to Plaintiff at this time but will be revealed during discovery.

34. On May 6, 2022, Plaintiff received one of multiple robocalls to his personal cell phone 1527 from telemarketers calling on behalf of Defendant Wellcare from phone number (915) 937-0971.

35. Plaintiff answered and heard a prerecorded voice message "Mary with Medicare benefits."

36. Plaintiff was extremely aggravated and annoyed for continuing to receive the same prerecorded voice message and followed the prompts for the sole purpose of identifying the company responsible for the calls.

37. Plaintiff was then transferred to a telemarketer calling on behalf of Defendant Wellcare named Kevin.

38. Kevin asked Plaintiff if he had Medicare parts A and B. Plaintiff does not have Medicare however advised Kevin that he did for the sole purpose of identifying the company responsible

6

for the calls.

39.     With the permission of a family member Plaintiff knows has Medicare, Plaintiff asked the individual if he can borrow their Medicare information for the sole purpose of identifying the company responsible for the calls. Plaintiff did not borrow the individuals Medicare information to gain any additional Medicare benefits or to perform any Medicare fraud that would violate any laws or cause the US government any financial loss.

40.     Kevin then collected Plaintiff's personal information, asked Plaintiff qualifying Medicare questions, and advised Plaintiff he would be transferring him to an "agent" in Texas.

41.     Plaintiff was then transferred to another telemarketer from Defendant Wellcare named Karen.

42.     Karen verified Plaintiff's information and then transferred Plaintiff to an agent named Brain Chase from Defendant Wellcare that stated he was a "licensed sales agent."

43.     Before Karen transferred the call to Brian, Karen stated to Brian,

"Good afternoon, this is Karen your operator please check and see if he's not missing out on any Medicare benefits in your area sir zip code is 79907."

44.     Brian accepted the transfer from Karen which confirmed Defendant Wellcare hires telemarketers to call consumers with a prerecorded voice message en mass without prior express written consent of the called party soliciting additional Medicare products on behalf of Defendant Wellcare.

45.     Brain asked Plaintiff a series of qualifying questions and advised Plaintiff he was going to find a Medicare plan for Plaintiff.

46.     Brain then solicited Plaintiff for a Medicare Plan on behalf of Defendant Wellcare, the "Wellcare TexanPlus No Premium (HMO)."

47.     Brain stated to Plaintiff,

"the government gives Wellcare your part B premium check of $170."

48. If Plaintiff would have agreed to the "Wellcare TexanPlus No Premium (HMO)" plan it would benefit Defendant Wellcare financially.

49. Brian provided Plaintiff his contact information and advised Plaintiff their company website is https://www.wellcare.com which revealed the company responsible for the calls.

50. Plaintiff advised Brian that he would call him back if Plaintiff wanted to proceed with the "Wellcare TexanPlus No Premium (HMO)" plan.

51. Plaintiff did not give Brian his prior express written consent to call Plaintiff and follow up.

52. Plaintiff received two additional phone calls from Brian after plaintiff advised Brian, he would call him if interested.

53. Defendant Wellcare's telemarketers on five occasions used a local area code (915) where Plaintiff resides to trick him into thinking the call was local.

54. Table below displays the calls made to Plaintiff from Defendant Wellcare.

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 05/02/2022 | 1:34 PM | 915-944-2143 | Prerecorded voice message Mary with Medicare benefits. |
| 2. | 05/02/2022 | 1:52 PM | 915-237-3035 | Prerecorded voice message Mary with Medicare benefits. |
| 3. | 05/03/2022 | 4:55 PM | 915-200-4449 | Prerecorded voice message Mary with Medicare benefits. |

| | | | | |
|---|---|---|---|---|
| 4. | 05/04/2022 | 3:52 PM | 915-206-4971 | Prerecorded voice message Mary with Medicare benefits. |
| 5. | 05/06/2022 | 3:54 PM | 915-206-4971 | Prerecorded voice message Mary with Medicare benefits. Transferred to Kevin, Karen and Brian Chase from Wellcare. |
| 6. | 05/09/2022 | 8:30 AM | 855-430-4381 | Follow up call from Brian Chase. |
| 7. | 05/09/2022 | 10:59 AM | 855-430-4381 | Follow up call from Brian Chase. |

55. Defendant Wellcare employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

56. Each and every call was placed while knowingly ignoring the national do-not-call registry. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

57. Defendant Wellcare never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to Defendant Wellcare to socialmedia@wellcare.com on September 29, 2022, which is an email listed on their Facebook page they own and control https://www.facebook.com/WellcareMedicare.

58. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

59. No emergency necessitated the calls.

60.     On information and belief, Defendant Wellcare did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

61.     Defendant Wellcare's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

62.     Defendant Wellcare's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

63.     Defendant Wellcare's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

64.     Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## VICARIOUS LIABILITY OF DEFENDANT WELLCARE

65.     Defendant Wellcare is vicariously liable for the telemarketing calls that generated the lead for Defendant Wellcare.

66.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

67.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

68.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

10

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

69. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

70. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

71. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

72. To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's

11

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

73. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

74. Defendant Wellcare is legally responsible for ensuring that the telemarketers/agents that make telemarketing calls on its behalf comply with the TCPA when so doing.

75. Defendant Wellcare knowingly and actively accepted business that originated through illegal telemarketing.

76. Defendant Wellcare knew (or reasonably should have known) that its telemarketers/agents were violating the TCPA on its behalf but failed to take effective steps within Wellcare's power to force them to cease that conduct.

77. By hiring a company to make calls on its behalf, Defendant Wellcare "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

78. Moreover, Defendant Wellcare maintained interim control over the actions of its telemarketers/agents.

79. For example, Defendant Wellcare had absolute control over whether, and under what circumstances, it would accept a customer from their telemarketers/agents.

80. Furthermore, Defendant Wellcare had day-to-day control over the actions of its telemarketers/agents, including the ability to prohibit them from using prerecorded messages to contact potential customers of Defendant Wellcare and the ability to require them to respect the National Do Not Call Registry.

81. Defendant Wellcare also gave interim instructions to its telemarketers/agents by providing lead-qualifying instructions and lead volume limits.

82. Defendant Wellcare donned its telemarketers/agents with apparent authority to make the calls at issue.

83. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

84. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

85. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

86. Defendant Wellcare is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when Defendant Wellcare solicited Plaintiff for additional Medicare products.

### The Plaintiff's cell phone is a residential number

87. The calls were to the Plaintiff's cellular phone 1527 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline

13

phones at his residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION

### COUNT ONE:
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

88. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89. Defendant and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using a prerecorded voice message without prior express written consent.

90. Plaintiff was statutorily damaged at five (5) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

91. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

92. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-

emergency telemarketing calls to any cellular telephone number using a prerecorded voice message without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

93. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

95. Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

96. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

97. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

98. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

99. The foregoing acts and omissions of the Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

101. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendant jointly and severally as follows:

    A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

B. A declaration that actions complained of herein by Defendant violates the TCPA;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for five calls.

E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for seven calls.

F. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G. An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

October 5, 2022,                                Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com